**BAKER & HOSTETLER LLP**
Heather J. McDonald (HM 3320)
Robertson D. Beckerlegge (RB 1829)
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Attorneys for Plaintiff
Deckers Outdoor Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>                          Plaintiff,<br><br>            -against-<br><br>VARIOUS JOHN DOES; JANE DOES and XYZ COMPANIES,<br><br>                          Defendants. | CIVIL ACTION NO.<br><br>10 CV ____ |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR AN EX PARTE TEMPORARY RESTRAINING
ORDER; SEIZURE ORDER; NOTICE SETTING PRELIMINARY INJUNCTION
HEARING; ORDER PERMITTING AMENDMENT OF COMPLAINT; ORDER TO
ISSUE JOHN DOE SUMMONSES; ORDER SEALING THE COURT FILE;
<u>AND ORDER SETTING BOND</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

    A.    The Present Action.......................................................................... 2

    B.    Deckers Outdoor Corporation.......................................................... 2

    C.    Defendants' Wrongful Acts ............................................................. 2

II.   PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER
    AND A PRELIMINARY INJUNCTION IN THIS COUNTERFEITING CASE ........... 3

    A.    Defendants' Acts Threaten Irreparable Harm....................................... 4

    B.    The Harm to Plaintiff Greatly Outweighs Any Hypothetical Injury to the
    Defendants .................................................................................... 4

    C.    Plaintiff Will Succeed on the Merits of This Action ............................. 5

        1.    Plaintiff's Right to Relief Under the Trademark Act of 1946 ............ 6

            a.    The Strength of Plaintiff's Marks .................................. 7

            b.    The Degree of Similarity Between the Marks ............................. 7

            c.    The Closeness of the Products ...................................... 8

            d.    Defendants' Purpose in Adopting Plaintiff's Trademarks............. 8

        2.    Plaintiff's Right to Relief Under Common Law....................................... 8

        3.    Plaintiff's Right to Relief Under Section 43(a) of the Trademark
           Act of 1946 ........................................................................ 10

        4.    Plaintiff's Right to Relief Under Section 43(c) of the Trademark
           Act of 1946 ........................................................................ 10

            a.    Ownership of a Famous and Distinctive Mark ........................... 11

            b.    Likelihood of Dilution ................................................. 12

                i.    Likelihood of Dilution by Tarnishment ........................... 12

                ii.    Likelihood of Dilution by Blurring................................. 13

III.   BECAUSE THE ULTIMATE RELIEF PLAINTIFF SEEKS IN THIS ACTION
    WILL ALMOST CERTAINLY BE FRUSTRATED IF NOTICE IS GIVEN, A
    TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER SHOULD BE
    ISSUED EX PARTE................................................................................. 15

    A.    Plaintiff's Prosecution of This Action Will be Rendered Futile if a
    Temporary Restraining Order and Seizure Order is Not Issued Ex Parte or
    if Defendants Receive Notice of the Pendency of This Action Prior to
    Execution of the Seizure Order.......................................................... 15

    B.    The Lanham Act Authorizes Seizure of Defendants' Infringing Products.......... 17

i

## TABLE OF CONTENTS

**Page**

IV.    CONCLUSION.................................................................................................... 17

## **TABLE OF AUTHORITIES**

### **Cases**

*A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689 (2d Cir. 1972)................................7

*Adidas Sportschuhfabriken Adi Dassler Stiftung & Co., K.G. v. Cheung.*, No. 87 Civ. 8989, 1990
    U.S. Dist. LEXIS 3953 (S.D.N.Y. April 10, 1990) ....................................................16

*American Ass'n for Advancement of Science v. Hearst Corp.*, 498 F. Supp. 244 (D.D.C. 1980) .. 7

*American Home Products v. Johnson Chem. Co.*, 589 F.2d 103 (2d Cir. 1977)............................7

*Apollo Distrib. Co. v. Apollo Imports, Inc.*, 341 F. Supp. 455 (S.D.N.Y. 1972) .....................9, 10

*Armco Steel Corp. v. Int'l Armament Corp.*, 249 F. Supp. 954 (D.D.C. 1966)..............................8

*Arthur Guinness & Sons, PLC v. Sterling Publishing Co.*, 732 F.2d 1095 (2d Cir. 1984) ............3

*Bacardi & Co. v. N.Y. Lighter Co.*, No. 97-CV-7140, 2000 U.S. Dist. LEXIS 19852 (E.D.N.Y.
    Sept. 5, 2000) .........................................................................................6

*Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431 (S.D.N.Y. 2000) ..............8

*Big Star Entertainment, Inc. v. Next Big Star, Inc.*, 105 F. Supp.2d 185 (S.D.N.Y. 2000)...........7

*Blue Bell, Inc. v. Maverick Sportswear, Inc.*, 184 U.S.P.Q. 77 (S.D.N.Y. 1974)..........................5

*Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co.*, 1995 U.S. Dist. LEXIS 12849 (S.D.N.Y.
    1995) ...................................................................................................7

*CBS, Inc. v. Cineamerica Distributing Corp.*, No. 78 Civ. 2245, 1978 U.S. Dist. LEXIS 14919
    (S.D.N.Y. Oct. 17, 1978) ............................................................................4

*Cf. National Info. Corp. v. Kiplinger Washington Editors*, 771 F. Supp. 460 (D.D.C.1991) ........8

*Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates N. Am., Inc.*, 270 F.Supp.2d 432
    (S.D.N.Y. 2003) .......................................................................................4

*Clinique*, 945 F. Supp. at 561 .................................................................... passim

*Colgate-Palmolive Co. v. North Am. Chem. Corp.*, 238 F. Supp. 81 (S.D.N.Y. 1964)................ 5

*Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979) ......... 3

*Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39 (2d Cir. 1994)).................................... 12, 13, 14

*Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108 (S.D.N.Y 1981) ...................... 8

*Envirosafe Servies, Inc. v. Envirosure Mgmt. Co.*, 1989 U.S. Dist. LEXIS 70 (E.D. Pa. 1989).. 10

*Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 174 (2d Cir. 2000); ............ 4, 14

*Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248 (S.D.

   Fla. 1982) ........................................................................................ 16

*Florists' Transworld Delivery, Inc. v. Originals Florist & Gifts, Inc.*, No. 00 Civ. 4458, 200 U.S.

   Dist. LEXIS 16869 (N.D. Ill. Nov. 9, 2000)...................................................... 5

*Fund of Funds, Ltd. v. First Am. Fund of Funds, Inc.*, 274 F. Supp. 517 (S.D.N.Y. 1967) ....... 8, 9

*Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997) ............................. 4, 8

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir.

   1975) ........................................................................................... 6, 7

*Hartz & Co., Inc. v. Italia, Inc.*, 97 Civ. 5657 (RO), 1998 U.S.Dist. LEXIS 3716 at * 6 n.9

   (S.D.N.Y. Mar. 24, 1998) ....................................................................... 11

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70  (2d Cir. 1988) .................................... 4

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497 (2d Cir. 1996)................. 11, 12, 13

*Jeffrey Millstein, Inc. v. Gregor, Lawlor & Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995) ................ 3

*Jeral Trading Corp. v. Weinstein*, 1995 U.S. Dist. LEXIS 20119 (S.D.N.Y. 1995).................... 4

*Joanna Farms Inc. v. Citrus Bowl Inc.*, 468 F. Supp. 866 (E.D.N.Y 1978)............................ 5

*Jordan v. Can You Imagine, Inc.*, No. 04 Civ 4696, 2005 U.S. Dist. LEXIS 8726 (S.D.N.Y. May

   12, 2005) ........................................................................................ 4

*K.H. v. Vincent Smith School*, No. CV-06-0319, 2006 U.S. Dist LEXIS 22412 (E.D.N.Y. Mar. 29, 2006) .................................................................................................................. 3

*Leslie Fay Cos. v. Leslie Fay Cos.*, 216 Bankr. 117 (S.D.N.Y. 1997) ......................................... 14

*Londontown Mfg. Co. v. Cable Raincoat Co.*, 371 F. Supp. 1114 (S.D.N.Y. 1974) ..................... 8

*Lorillard Tobacco Co. v. Canstar (U.S.A.), Inc.*, No. 03 Civ 4769, 2005 U.S. Dist. LEXIS 38414 (N.D. Ill. Aug. 24, 2005) .................................................................................................. 16

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.* 454 F.3d 108 (2d Cir. 2006) .......................... 7

*Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538 (2d Cir. 1956) ...................... 6

*Matter of Vuitton et Fils, S.A.*, 606 F.2d 1, (2nd Cir. 1979) ................................................... 16, 17

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026 (2d Cir. 1989) ......... 12

*Miles Shoes, Inc. v. R.H. Macy & Co.*, 199 F.2d 602 (2d Cir. 1952), *cert. denied*, 345 U.S. 909 (1953) .......................................................................................................................... 8

*Miss Universe, Inc. v. Patricelli*, 408 F.2d 506 (2d Cir. 1969) ................................................. 6, 7

*Mister Softee, Inc. v. Valdez*, No. 01 Civ. 12742, 2002 U.S. Dist. LEXIS 6450 (S.D.N.Y. Apr. 15, 2002) ......................................................................................................................... 8

*Mortellito v. Nina of California, Inc.*, 335 F. Supp. 1288 (S.D.N.Y. 1972) ......................... 6, 8, 10

*My-T Fine Corp. v. Samuels*, 69 F.2d 76 (2d Cir. 1934) ............................................................ 5

*Natural White, Inc. v. Dentorium Products Co.*, 2000 U.S.App. LEXIS 7755 (2d Cir. 2000) ...... 4

*Nature's Bounty, Inc. v. Super X Drugs Corp.*, 490 F. Supp 50 (E.D.N.Y. 1980) ......................... 6

*New York Yellow Pages, Inc. v. Citibank, N.A.*, 480 F. Supp 77 (S.D.N.Y. 1979) ....................... 6

*Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190 (2d Cir. 1971) ...................... 4

*Onan Corp. v. United States*, 476 F. Supp. 428 n.1 (D. Minn. 1979) ........................................ 15

*Oral-B Lab, Inc. v. Mi-Lor Corp.*, 810 F.2d 20 (2d Cir. 1987) ................................................... 6

*Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 451 F. Supp. 555 (S.D.N.Y. 1978) .................. 8

*Polymer Technology Corp. v. Mimran*, 37 F.3d 74 (2d Cir. 1994) ................................. 3

*Reddy Communications, Inc. v. Environmental Action Found.*, 471 F. Supp. 936 (D.D.C. 1979) 6

*Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.*, 858 F. Supp. 1268, 1277

     (S.D.N.Y. 1994), *aff'd*, 57 F.3d 1062 (2d Cir. 1995)) ............................................. 12

*Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. Of Travel Dev.*, 955 F.

     Supp. 605 n.28 (E.D.Va. 1997) ................................................................... 14

*RJR Foods, Inc. v. White Rock Corp.*, 1978 U.S. Dist. LEXIS 15080 (S.D.N.Y. 1978) ............... 7

*Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495 (2d Cir. 1962) ....................... 5, 9

*Sears, Roebuck & Co. v. Sears Financial Network*, 576 F. Supp. 857 (D.D.C. 1983) ............. 9, 10

*Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127 (2d Cir. 1982) ........................... 6

*The Deal, LLC v. Korangy Publ'g*, 309 F. Supp. 2d 512 (S.D.N.Y. Jan. 21, 2004) ....................... 6

*Tiny Tot Sports, Inc. v. Sporty Baby, LLC*, No. 04 Civ 4487, 2005 U.S. Dist. LEXIS 18137

     (S.D.N.Y. Aug. 24, 2005) .......................................................................... 8

*Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733 (S.D.N.Y.

     1997) .................................................................................................... 12

*Ventura Travelware Inc. v. A to Z Luggage Co.*, 1986 U.S. Dist. LEXIS 18022 (E.D.N.Y. 1986) 5

*Yale Elec. Corp. v. Robertson*, 26 F.2d 972 (2d Cir. 1928) ............................................. 9

## Rules

1118 ............................................................................................................... 11

15 U.S.C. § 1051 ............................................................................................... 1, 6

15 U.S.C. § 1116(d) ............................................................................................. 17

15 U.S.C. § 1125(a) ....................................................................................................... 9

15 U.S.C. § 1125(c) ...................................................................................................... 10

15 U.S.C. § 1125(c)(2) .................................................................................................. 11

15 U.S.C. § 1127 .......................................................................................................... 10

15 U.S.C. §§ 1117(a) .................................................................................................... 11

H.R. Rep. No. 374, 104th Cong., 1st Sess. 3, reprinted in 1995 U.S.C.C.A.N. 1029, 1030) ....... 11

N.Y. Gen. Bus. Law § 360-1 .................................................................................. 10, 11

## I.   INTRODUCTION

### A.   The Present Action

This memorandum is in support of an ex parte application to immediately restrain counterfeiting and infringement of Plaintiff's trademarks in violation of the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq* (the "Lanham Act").   Plaintiff seeks a Temporary Restraining Order; an Order permitting the seizure of counterfeit and infringing merchandise, including any equipment used in the manufacture of same; the setting of a hearing on Plaintiff's request for a Preliminary Injunction; and the issuance of John Doe Summonses.

An ever increasing problem in the United States is the sale of counterfeit merchandise. Despite many lawsuits filed by the owners of valuable trademarks and counterfeiters continue to surreptitiously churn out their inferior wares and flood the market with cheap knock-offs.   Like parasites, the counterfeiters' activities are sustained by the owners' reputations for high quality merchandise.   Unfortunately, members of the consuming public, unable to distinguish between the counterfeit and authentic merchandise, inevitably attribute defects in the bogus merchandise to the owners.   Moreover, the counterfeiters' illicit operations deprive those owners of billions of dollars in profit and City and State governments of millions of dollars in tax revenues.

Counterfeiters are notoriously hard to apprehend and enforcement is perpetually an uphill battle.   Actual experience has proven time and time again that once a counterfeiter realizes he is about to be apprehended, he invariably will conceal or destroy any relevant business records and temporarily transfer his inventory to another counterfeiter for safekeeping. For this reason, conventional restraining orders are largely ineffective. Easy money and substantial cash profits, are no match for court orders.

Defendants in this action can similarly be expected to divest themselves of their inventory of counterfeit merchandise and any relevant business records absent the issuance of an

ex parte seizure order. Confronted with the loss of their inventory and a substantial adverse judgment, it is unrealistic to expect them to produce, voluntarily, their contraband merchandise.

**B.     Deckers Outdoor Corporation**

Plaintiff Deckers Outdoor Corporation ("DOC") is a Delaware corporation, having its principal place of business located at 495-A South Fairview Avenue, Goleta, California.

The DOC brand is known throughout the world.  DOC designs and markets innovative, functional and fashion-oriented footwear developed for both high performance outdoor activities and everyday causal lifestyle use as defined in paragraph 11 of the Complaint (the "Plaintiff's Registered Trademarks").  DOC merchandise is sold in the United States in company owned stores, authorized retailers and online at company owned websites like www.uggaustralia.com. DOC has and is conducting business in interstate commerce in the State of New York and in this judicial district.

**C.     Defendants' Wrongful Acts**

DOC is aware that Defendants are engaged in the manufacture, distribution, sale and/or offering for sale of unauthorized merchandise bearing counterfeits and/or infringements of the DOC Trademarks fully set forth in the Declarations submitted herewith. It is impossible to quantify the damage those sales will cause to Plaintiff's reputation and future sales.

It is imperative that, in addition to being able to promptly halt Defendants' distribution of infringing goods, Plaintiff be able to seize whatever quantity of counterfeit and/or infringing merchandise is within Defendants' custody or control.  This includes the machines and materials used to manufacture the merchandise as well as the supplies of labels and packaging containing counterfeits and infringements of the DOC Trademarks.

As the Declarations demonstrate, Plaintiff's experience is that manufacturers and sellers of counterfeit and/or infringing products are likely to destroy the evidence of their infringements

and/or remove their illegal products and flee the jurisdiction if notified of the pendency of the action before issuance of an injunction.   If, therefore, Defendants are given notice of the pendency of Plaintiff's application for a temporary restraining order and seizure and impoundment order, they may destroy, conceal or remove their illegal merchandise, the equipment and materials they use to manufacture or produce it, and the records related thereto. This Court would thereby be precluded from granting Plaintiff effective relief against Defendants' infringing activities.

Accordingly, Plaintiff requests the entry of a temporary restraining order, without notice, as well as an order directing the immediate seizure of the counterfeit goods and supplies. Without entry of these orders, neither this Court nor Plaintiff will be able to prevent the disappearance of the counterfeit goods, or prevent the destruction of crucial evidence. A temporary restraining order and a seizure order are therefore critical to protect Plaintiff's rights.

## II.   PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION IN THIS COUNTERFEITING CASE

Plaintiff is entitled to the requested temporary restraining order and preliminary injunction because it can demonstrate that it will suffer irreparable harm if Defendants are not enjoined promptly, and either (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits of this action to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party (Plaintiff) requesting the preliminary relief. See, *Jeffrey Millstein, Inc. v. Gregor, Lawlor & Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995); *Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 77-78 (2d Cir. 1994); *Arthur Guinness & Sons, PLC v. Sterling Publishing Co.*, 732 F.2d 1095, 1099 (2d Cir. 1984); *Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206-07 (2d Cir. 1979); *K.H. v. Vincent Smith School*, No. CV-06-0319, 2006 U.S. Dist LEXIS 22412 (E.D.N.Y. Mar. 29, 2006);

*Jordan v. Can You Imagine, Inc.*, No. 04 Civ. 4696, 2005 U.S. Dist. LEXIS 8726 (S.D.N.Y. May 12, 2005); *Jeral Trading Corp. v. Weinstein*, 1995 No. 95 Civ. 0057 U.S. Dist. LEXIS 20119 (S.D.N.Y. 1995); *CBS, Inc. v. Cineamerica Distributing Corp.*, No. 78 Civ. 2245, 1978 U.S. Dist. LEXIS 14919 (S.D.N.Y. Oct. 17, 1978).

### A.    **Defendants' Acts Threaten Irreparable Harm**

Defendants' infringing activities must be stopped immediately in order to prevent further diversion of sales from Plaintiff and harm to Plaintiff's reputation from the sale of counterfeit merchandise. Defendants' continued infringing activities result in irreparable harm to Plaintiff.

Many courts in the Second Circuit have held that a prima facie showing of trademark infringement creates a presumption that the trademark holder has suffered irreparable harm. *See, e.g.*, *Natural White, Inc. v. Dentorium Products Co.*, No. 00-7173 2000 U.S.App. LEXIS 7755 (2d Cir. April 25, 2000); *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 174 (2d Cir. 2000); *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997); *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988); *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971); *Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates N. Am., Inc.*, 270 F.Supp.2d 432 (S.D.N.Y. 2003).

### B.    **The Harm to Plaintiff Greatly Outweighs Any Hypothetical Injury to the Defendants**

Plaintiff has expended substantial efforts over the years to maintain, grow and expand its enviable reputation and the goodwill associated with DOC products.  The harm done to that reputation and good will by allowing Defendants' to use copies of the DOC Trademarks in connection with goods identical in kind to those sold by Plaintiff is greatly outweighed by any hypothetical injury to Defendants who commit trademark infringement on seemingly a daily

basis.

There is serious doubt that this Court should even consider any alleged commercial interests that Defendants may assert, inasmuch as Defendants are deliberately plagiarizing and trading upon Plaintiff's goodwill. *See, e.g., My-T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir. 1934); *Florists' Transworld Delivery, Inc. v. Originals Florist & Gifts, Inc.*, No. 00 Civ. 4458, 200 U.S. Dist. LEXIS 16869 (N.D. Ill. Nov. 9, 2000); *Ventura Travelware Inc. v. A to Z Luggage Co., No. 86 CV 13,* 1986 U.S. Dist. LEXIS 18022 (E.D.N.Y. Nov. 6, 1986); *Joanna Farms Inc. v. Citrus Bowl Inc.*, 468 F. Supp. 866 (E.D.N.Y 1978); *Colgate-Palmolive Co. v. North Am. Chem. Corp.*, 238 F. Supp. 81, 87 (S.D.N.Y. 1964). However, even if such interests are weighed, this Court should give greater consideration to the fact that Defendants are believed to have been distributing the infringing merchandise for a short period of time and the property rights which Defendants are to blatantly appropriating are the result of many years of significant effort by, and expense to, Plaintiff. *Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495 (2d Cir. 1962); *Blue Bell, Inc. v. Maverick Sportswear, Inc.*, 184 U.S.P No. 74 Civ. 1974 U.S. Dist. LEXIS 7797 (S.D.N.Y. July 1, 1974). *See generally, Jeral Trading Corp. v. Weinstein, supra.*

## C.   **Plaintiff Will Succeed on the Merits of This Action**

Defendants have committed trademark counterfeiting and infringement.  Plaintiff has long and extensively used its Trademarks on footwear and accessories. As previously detailed, Plaintiff is the owner of valid U.S. Trademark Registrations. By contrast, Defendants, upon information and belief, have begun their use in commerce of the infringing Trademarks, and trade names of Plaintiff, very recently.

It is a fundamental principle of trademark law that the first party to use a trademark in conjunction with goods has the right to prevent others from subsequently adopting a confusingly

similar mark on such goods. *See Oral-B Lab, Inc. v. Mi-Lor Corp.*, 810 F.2d 20 (2d Cir. 1987);

*Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127 (2d Cir. 1982); *Grotrian,*

*Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975); *Miss*

*Universe, Inc. v. Patricelli*, 408 F.2d 506 (2d Cir. 1969); *Bacardi & Co. v. N.Y. Lighter Co.*, No.

97-CV-7140, 2000 U.S. Dist. LEXIS 19852 (E.D.N.Y. Sept. 5, 2000); *Mortellito v. Nina of*

*California, Inc.*, 335 F. Supp. 1288 (S.D.N.Y. 1972). Accordingly, Plaintiff is entitled to

preliminary injunctive relief under any one of four separate legal doctrines:

### 1.    Plaintiff's Right to Relief Under the Trademark Act of 1946

Plaintiff is the owner of a valid U.S. Trademark Registrations. Under the Trademark Act

of 1946 (15 U.S.C. § 1051 *et seq.*), such registration gives Plaintiff powerful statutory rights. *See*

*Reddy Communications, Inc. v. Environmental Action Found.*, 471 F. Supp. 936 (D.D.C. 1979).

For example, Section 7(b) of the Act (15 U.S.C. § 1057(b)) provides, in pertinent part:

> A certificate of registration of a mark upon the principal register
> provided by this Act shall be prima facie evidence of the validity
> of the registration, registrant's ownership of the mark, and of
> registrant's exclusive right to use the mark in commerce in
> connection with the goods... specified in the certificate, subject to
> any conditions and limitations stated therein.

Therefore, a federally registered trademark is afforded a strong presumption of validity.

*See Miss Universe, Inc. v. Patricelli, supra; Maternally Yours, Inc. v. Your Maternity Shop, Inc.*,

234 F.2d 538, 542 (2d Cir. 1956); *The Deal, LLC v. Korangy Publ'g*, 309 F. Supp. 2d 512

(S.D.N.Y. Jan. 21, 2004); *Nature's Bounty, Inc. v. Super X Drugs Corp.*, 490 F. Supp 50

(E.D.N.Y. 1980); *New York Yellow Pages, Inc. v. Citibank, N.A.*, 480 F. Supp 77 (S.D.N.Y.

1979).

The test of infringement includes an analysis of several factors including the strength of

Plaintiff's marks, the degree of similarity between the goods, and the infringer's purpose in

adopting its mark. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.* 454 F.3d 108 (2d Cir. 2006); *Grotrian, Helfferich, Schulz v. Steinway*, 523 F.2d 1331 (2d Cir. 1975); *Miss Universe Inc. v. Patricelli, supra; American Ass'n for Advancement of Science v. Hearst Corp.*, 498 F. Supp. 244, 254 (D.D.C. 1980); *RJR Foods, Inc. v. White Rock Corp.*, No. 77 Civ. 2329 1978 U.S. Dist. LEXIS 15080 (S.D.N.Y. Oct. 6, 1978). Analysis of these factors indicates, indisputably, that Defendants have intentionally infringed Plaintiff's Trademarks.

a.      The Strength of Plaintiff's Marks

As reflected in the accompanying declarations, Plaintiff's Trademarks is well-known. The fact that DOC Trademarks are federally registered, in addition to creating a strong presumption of validity, stands as further proof of the strength of the marks. *See American Home Products v. Johnson Chem. Co.*, 589 F.2d 103, 106 (2d Cir. 1977); and *Big Star Entertainment, Inc. v. Next Big Star, Inc.*, 105 F. Supp.2d 185 (S.D.N.Y. 2000).

b.      The Degree of Similarity Between the Mark

Defendants have chosen, out of the infinite number of marks available, one that is virtually identical to that of Plaintiff. There is clearly no defense available to Defendants regarding their choice of mark. It has often been held that the law does not look favorably on the businessman who, out of the vast variety of marks available, chooses as a trademark one which comes as close as he dares to a well-known mark on an identical product. *See, e.g., A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689 (2d Cir. 1972); and *Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co.*, No. 95 Civ. 4008 1995 U.S. Dist. LEXIS 12849 (S.D.N.Y. Sept. 6, 1995).

c.      The Closeness of the Products

Defendants use their marks on products which are identical in kind, but not in quality, to those of Plaintiff. The products could not be any more similar.

d.   Defendants' Purpose in Adopting Plaintiff's Trademarks

The DOC Trademarks are world famous. Defendants chose marks which are virtually identical to such strong marks conclusively demonstrates Defendants' desire and purpose to trade upon Plaintiff's goodwill. *See Miles Shoes, Inc. v. R.H. Macy & Co.*, 199 F.2d 602, 603 (2d Cir. 1952), *cert. denied*, 345 U.S. 909 (1953); *Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108 (S.D.N.Y 1981); *Londontown Mfg. Co. v. Cable Raincoat Co.*, 371 F. Supp. 1114 (S.D.N.Y. 1974); and *Fund of Funds, Ltd. v. First Am. Fund of Funds, Inc.*, 274 F. Supp. 517, 527 (S.D.N.Y. 1967). *See, e.g., Mister Softee, Inc. v. Valdez*, No. 01 Civ. 12742, 2002 U.S. Dist. LEXIS 6450 (S.D.N.Y. Apr. 15, 2002). *Cf. National Info. Corp. v. Kiplinger Washington Editors*, 771 F. Supp. 460, 468 (D.D.C.1991).   Defendants' choice was deliberate and their intentions were malicious.

**2.   Plaintiff's Right to Relief Under Common Law**

Plaintiff will also prevail under the common law of unfair competition.  *See Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997); *Tiny Tot Sports, Inc. v. Sporty Baby, LLC*, No. 04 Civ 4487, 2005 U.S. Dist. LEXIS 18137 (S.D.N.Y. Aug. 24, 2005); *Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 451 F. Supp. 555, 563 (S.D.N.Y. 1978); *Mortellito v. Nina of California, Inc.*, *supra* at 1295; and *Armco Steel Corp. v. Int'l Armament Corp.*, 249 F. Supp. 954 (D.D.C. 1966).

Defendants have infringed the world famous DOC Trademarks in an obvious attempt to establish an association or connection between their inferior goods and the superior quality and business of Plaintiff. Such acts constitute palming off, deception, and misappropriation of Plaintiff's property rights. All of these blatant acts are actionable under the common law of unfair competition and entitle Plaintiff to immediate injunctive relief. *Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431 (S.D.N.Y. 2000);  *Sears, Roebuck & Co. v. Sears*

*Financial Network*, 576 F. Supp. 857 (D.D.C. 1983); and *Fund of Funds, Ltd.*, *supra* at 524.

For example, in *Apollo Distrib. Co. v. Apollo Imports, Inc.*, 341 F. Supp. 455 (S.D.N.Y. 1972), the court upheld the protection of a long-established trademark and trade name under both Section 43(a) of the Trademark Act and the general law of unfair competition. In granting summary judgment, Judge Weinfeld stated, as to the claim of unfair competition:

> Defendants' selection of a name long used by plaintiff, which name had become identified in the public mind with products distributed by plaintiff, strongly suggests and warrants a finding of defendants' deliberate purpose to capitalize on the good will plaintiff had built up over the years []. To permit defendants' continued use of 'Apollo' would unfairly give it the benefit of Plaintiff's well-established reputation and of its extensive and costly advertising campaign over the years.

*Id.* at 459 (citation omitted).

As Judge Learned Hand explained in *Yale Elec. Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928):

> If another uses [one's trademark], he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury . . . unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful. This is a case of unlawful use of another's name and reputation, and plaintiff is entitled to relief.

Judge Hand's oft-quoted summary of the law in *Yale Elec. Corp.*, which has survived the test of time, is directly applicable to the present facts. This Court should not permit Defendants to trade upon Plaintiff's reputation, which is symbolized by the DOC Trademarks, nor should this Court allow Defendants to tarnish Plaintiff's reputation by the substitution of Defendant's own goods. *See, Safeway Stores, Inc.*, *supra* at 498.

**3.**    **Plaintiff's Right to Relief Under Section 43(a) of the Trademark Act of 1946**

Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), provides, in pertinent

part, that:

> Any person who shall affix, apply or annex, or use in connection with any goods or services,... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce... shall be liable to a civil action... by any person who believes that he is or is likely to be damaged by the use of such false description or representation.

Defendants' use of the DOC Trademarks are a false description or representation of the source or origin of goods in violation of this statute and is a separate basis for granting a preliminary injunction. *See Sears, Roebuck & Co.*, *supra*, at 861; *Mortellito v. Nina of California, Inc.*, *supra*, at 1294; *Apollo Distrib. Co. v. Apollo Imports, Inc.*, *supra*, at 458; and *Envirosafe Services, Inc. v. Envirosure Mgmt. Co.*, No. 87-4659, 1989 U.S. Dist. LEXIS 70 (E.D. Pa. July 5, 1989).

### 4.   Plaintiff's Right to Relief Under Section 43(c) of the Trademark Act of 1946

Plaintiff also asserts a federal dilution claim under Section 43(c) of the Lanham Act and a state dilution claim under N.Y. Gen. Bus. Law § 360-1. Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), forbids dilution of famous marks and provides injunctive relief against, "commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark...." 15 U.S.C. § 1125(c). Dilution is defined as, "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. Similarly, New York law provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or

not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

N.Y. Gen. Bus. Law § 360-1 (McKinney's 1998).[1] In addition, upon a showing that the person against whom the injunction is sought, "willfully intended to trade on the owner's reputation or to cause dilution of the famous mark," a party may obtain further relief under 15 U.S.C. §§ 1117(a) and 1118. *See* 15 U.S.C. § 1125(c)(2).

To prevail on the dilution claims, Plaintiff must show (1) ownership of a famous or distinctive mark and (2) a likelihood of dilution. *See Clinique Labs, Inc. v. Dep Corp.*, 945 F. Supp. 547, 561 (S.D.N.Y. 1996); *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 506 (2d Cir. 1996). Dilution can be found upon a showing of either blurring or tarnishment. *See Clinique*, 945 F. Supp. at 561 (*citing* H.R. Rep. No. 374, 104th Cong., 1st Sess. 3, reprinted in 1995 U.S.C.C.A.N. 1029, 1030); *Hormel*, 73 F.3d at 506 (2d Cir. 1996) (same standard used for state dilution claim).

a.    Ownership of a Famous and Distinctive Mark

Section 43(c) sets out the factors relevant to the determination of whether a mark is famous or distinctive.[2] "The determination of whether a mark is famous and distinctive under

---

[1] The analysis under the federal anti-dilution law and the state anti-dilution law is the same and both statutes essentially require the same elements to be met. *Hartz & Co., Inc. v. Italia, Inc.*, 97 Civ. 5657 (RO), 1998 U.S.Dist. LEXIS 3716 at * 6 n.9 (S.D.N.Y. Mar. 24, 1998).

[2] The factors from 15 U.S.C. § 1125(c)(1) are:

(A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of the use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services in which the mark is used; (F) the degree of recognition of the mark in trading areas and channels of trade used by

(continue)

Section 43(c) is similar to the analysis for strength of the mark for trademark infringement purposes." *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 749 (S.D.N.Y. 1997) (*citing Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989) and *Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.*, 858 F. Supp. 1268, 1277 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 1062 (2d Cir. 1995)). As discussed above, with respect to the strength of Plaintiff's marks in the context of Plaintiff's trademark infringement claim, Plaintiff does, in fact, own famous and distinctive marks.

          b.     Likelihood of Dilution

              i.     Likelihood of Dilution by Tarnishment

"Tarnishment may occur when Plaintiff's marks are used by the defendant in association with unwholesome or shoddy goods or services." *Clinique*, 945 F. Supp. at 562 (*citing Hormel*, 73 F.3d at 507; *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994)). As a result of dilution by tarnishment, "'the public will associate the lack of quality or lack of prestige in the defendant's goods with Plaintiff's unrelated goods,' . . . [and] the mark loses its ability to serve as a 'wholesome identifier' of Plaintiff's product." *Hormel*, 73 F.3d at 507 (*quoting Deere & Co*, 41 F.3d at 43). "The sine qua non of tarnishment is a finding that Plaintiff's marks will suffer negative associations through defendant's use." *Hormel*, 73 F.3d at 507.

In the instant case, Defendants' products are shoddy and are of inferior quality compared to

_____

(continued)

          the mark's owner and the person against whom the injunction is sought; (G) the nature and extent of the use of the same similar marks by third parties; and (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

Plaintiff's products. As a result, the DOC Trademarks will suffer a negative association through Defendants' continued use of them on their products. A preliminary injunction should be granted based on the likelihood of dilution of Plaintiff's Trademarks by tarnishment.

ii.     Likelihood of Dilution by Blurring

Dilution by blurring occurs when, "customers or prospective customers . . . see Plaintiff's marks used on a plethora of different goods and services," _Hormel_, 73 F.3d at 506, and where "'the defendant uses or modifies Plaintiff's trademarks to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of Plaintiff's product.'" _Clinique_, 945 F. Supp. at 562 and _Hormel_, 73 F.3d at 506 (_quoting Deere & Co_, 41 F.3d at 43). The six relevant factors for assessing dilution by blurring under Section 43(c) of the Lanham Act are: (1) the similarity of the trademarks; (2) similarity of the products; (3) the sophistication of consumers; (4) renown of the senior mark; (5) renown of the junior mark; and (6) predatory intent. _See Clinique_, 945 F. Supp. at 562 n. 22.

As discussed earlier, because of the likelihood of confusion under Section 43(a) of the Lanham Act, it follows that the DOC Trademarks are renowned, that the DOC Trademarks and goods are substantially similar to Defendants' marks and goods, and the relevant consumers are not so sophisticated as to avoid potential confusion. The balance of these factors alone weighs heavily in favor of finding dilution by blurring, especially since defendants' imitative use of Plaintiff's renowned Trademarks on similar, but ultimately inferior, products disallows the senior trademark from serving as a unique identifier of Plaintiff's superior products.[3] Therefore, a

---

[3] In the instant matter, there is technically no junior mark, since defendants are simply imitating Plaintiff's renowned senior mark. However, the renown of the junior mark factor does not always need to be included in a dilution analysis. _See Clinique_, 945 F. Supp. at 563; _Lexington Management Corp. v._

(continue)

preliminary injunction should be granted based on the likelihood of dilution of the DOC Trademarks by blurring.

Although it is not entirely clear how predatory intent should be considered in the analysis of either a federal or state dilution claim, this factor is not dispositive. For instance, it is not clear whether a showing of predatory intent is required for, or merely relevant to, a finding that the state anti-dilution statute has been violated. *Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39, 45-46 (2d Cir. 1994). Furthermore, different courts in the Second Circuit have not considered predatory intent in the analysis of a dilution claim under the Lanham Act. *See, e.g., Clinique*, 945 F. Supp. at 562 & n.22; *Federal Express Corp. v. Federal Expresso, Inc.*, No. 97-CV-1219 1998 U.S. Dist. LEXIS 15607 at *59-60 (N.D.N.Y. Sep. 30, 1998) (*citing Clinique*); *Leslie Fay Cos. v. Leslie Fay Cos.*, 216 Bankr. 117, 134 (S.D.N.Y. 1997); further, such an approach has been questioned by at least one court outside of this Circuit. *See Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. Of Travel Dev.*, 955 F. Supp. 605, 620 n.28 (E.D.Va. 1997).[4] In any event, it is clear in the instant matter that Defendants' use of the DOC Trademarks show that they fully intended to mimic Plaintiff's marks in order to take advantage of the image and

---

(continued)

*Lexington Capital Partners*, 10 F. Supp. 2d 271, 290 (S.D.N.Y. 1998) (where renown of the junior user's mark is a factor that has marginal relevance in cases which involve newly launched products or services).

[4] The law regarding predatory intent is unclear, especially with respect to Section 43(c). The Second Circuit has used this factor in analyzing state dilution claims, but the district courts in the Second Circuit tend not to use this factor for Section 43(c) claims. Judge Scheindlin's opinion, *Clinique Labs, Inc. v. Dep Corp.*, 945 F. Supp. 547, 562 n.23 (S.D.N.Y. 1996), is treated as the leading authority on this issue, and Judge Scheindlin deliberately does not apply this factor in the dilution by blurring analysis in that case. However, in the same year, but prior to the *Clinique* decision, Judge Scheindlin did consider predatory intent in *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F. Supp. 204, 213 (S.D.N.Y. 1996), but upon a motion for reconsideration, 1996 U.S. Dist. LEXIS 11079 at * 4 (S.D.N.Y. Aug. 2, 1996), she appeared to back away from considering predatory intent as a factor.

goodwill created by Plaintiff. Such acts constitute predatory intent. *See Clinique*, 945 F. Supp. at 562 n.22. A preliminary injunction, among other relief, should be granted since "predatory intent – the deliberate adoption of a junior mark to benefit from the fame of a senior mark-increases the likelihood that a junior mark will be used in a manner that will lessen the capacity of a famous mark to identify goods and services." *See Ringling Bros.-Barnum & Bailey Combined Shows, Inc.*, 955 F. Supp. at 620 n.28 (E.D. Va. 1997).

The DOC Trademarks have designations of origin which fit precisely within the statutory definition. Confusion follows if Defendants are permitted to use their infringing trademarks, especially on goods which are identical in kind to those of Plaintiff. Even if Plaintiff was affirmatively required to establish secondary meaning in its marks, the declarations submitted in support of this Motion establish that the DOC Trademarks have long served as the identifier of a single source of goods.

## III.   BECAUSE THE ULTIMATE RELIEF PLAINTIFF SEEKS IN THIS ACTION WILL ALMOST CERTAINLY BE FRUSTRATED IF NOTICE IS GIVEN, A TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER SHOULD BE ISSUED EX PARTE

### A.   Plaintiff's Prosecution of This Action Will be Rendered Futile if a Temporary Restraining Order and Seizure Order is Not Issued Ex Parte or if Defendants Receive Notice of the Pendency of This Action Prior to Execution of the Seizure Order

Rule 65 (b) of the Federal Rules of Civil Procedure provides that a temporary restraining order may be granted to the requesting party when irreparable injury may occur before a hearing on the preliminary injunction may be held. The purpose of such an order is to preserve the status quo. *See Onan Corp. v. United States*, 476 F. Supp. 428, 433 n.1 (D. Minn. 1979). Ex parte relief is particularly appropriate in infringement and counterfeiting cases, because of the likelihood that notice itself will disturb the status quo and Defendants will attempt to hide their illegal conduct.

15

In the Second Circuit's landmark decision, *Matter of Vuitton et Fils, S.A.*, 606 F.2d 1, (2nd Cir. 1979), the Court granted a temporary restraining order, without notice, finding that in other suits brought by the same Plaintiff, notice itself alerted various defendants and gave them sufficient time to transfer their counterfeit goods to other unknown persons for the purpose of avoiding effective Court relief. When an ex parte temporary restraining order is the only method by which the status quo can be preserved, so that the Court can provide effective final relief, it should be granted. *Id.* at 4. The court summarized the law on the notice requirement as follows:

> If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action. This is precisely contrary to the normal and intended role of "notice," and it is surely not what the authors of the rule either anticipated or intended.

*Id.* at 5. *See also Lorillard Tobacco Co. v. Canstar (U.S.A.), Inc.*, No. 03 Civ. 4769, 2005 U.S. Dist. LEXIS 38414 (N.D. Ill. Aug. 24, 2005).

Other federal courts have recognized that ex parte relief is often the only effective tool for combating widespread infringement or counterfeiting activity. *See, e.g., Adidas Sportschuhfabriken Adi Dassler Stiftung & Co., K.G. v. Cheung.*, No. 87 Civ. 8989, 1990 U.S. Dist. LEXIS 3953 (S.D.N.Y. April 10, 1990); and *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248, 249 (S.D. Fla. 1982).

Counsel's years of experience in policing intellectual property infringement have established that an infringer rarely turns over more than a token number of infringing products if notice is given and he has a chance to dispose of or hide his merchandise. More importantly, the information documenting the extent of Defendants' manufacture and/or distribution of these counterfeit products might also be concealed should notice be issued.

### B.   The Lanham Act Authorizes Seizure of Defendants' Infringing Products

The Lanham Act vests this Court with the authority to seize the goods bearing the

counterfeit marks involved, the means by which the infrigers make such marks, and the records documenting the manufacture, sale or receipt of items involved in counterfeiting.  15 U.S.C. § 1116(d) provides, in pertinent part:

> ...with respect to a violation that consists of using a counterfeit mark in connection with the sale, or distribution of goods or services, the court may, upon ex parte application, grant an order . . . providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacturer, sale or receipt of things involved in such violation. 15 U.S.C. § 1116(d).

Because Plaintiff has established a prima facie case of trademark counterfeiting and infringement by Defendants, it is also appropriate for the Court to grant Plaintiff's request for a Seizure Order in accordance with the provisions of the Lanham Act.

## IV.    CONCLUSION

As recognized in the *Vuitton* case, the typical counterfeiter runs a fly-by-night operation whose response to an injunction with notice is to transfer or conceal his stock of infringing goods and destroy any records reflecting his activities. Defendants' adoption of such flagrant copies of the DOC Trademarks show that Defendants are not good faith competitors. This is a case of outright counterfeiting and deception.

This Court has the authority to issue a temporary restraining order against Defendants preventing them from any further infringement of the DOC Trademarks. Moreover, this Court has the authority to order the seizure of the counterfeit goods, the equipment and materials for producing them and Defendants' records pending a hearing on the preliminary injunction in this action.  Defendants cannot be damaged by the Court's granting of a temporary restraining and seizure order as a hearing would be set within ten days, enough time for Defendants to justify

their counterfeiting if indeed they care to try.

Plaintiff respectfully request that the Court grant the relief requested herein.


DATED:      New York, New York              Respectfully submitted,
            November _8_, 2010               **BAKER HOSTETLER, LLP**


                                            By: _Heather McDonald_
                                            Heather J. McDonald, Esq. (HM 3320)
                                            45 Rockefeller Plaza
                                            New York, NY 10111
                                            (212) 589-4200
                                            Attorney for Plaintiff

18